**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JACK MARINE INTERNATIONAL SERVICES LTD., <br><br> Plaintiff, <br><br> v. <br><br> TILMAN ENTERPRISES INC., *et al.*, <br><br> Defendants. | C.A. No. 18-mc-349-MN |

**REPORT AND RECOMMENDATION**

      This is a garnishment proceeding. Plaintiff Jack Marine International Services, Ltd. ("Jack Marine") previously obtained a default judgment from a federal court in California against Tilman Enterprises Inc., Nodol Trading S.A., and Trinity Ships, Inc. ("Defendants"). Finding itself unable to collect in California, Plaintiff registered the judgment in this Court and requested the issuance of a Writ of Garnishment to GMTC I, LLC ("GMTC"). The Court issued the Writ. GMTC answered the Writ. In its Answer, GMTC verified that it did not possess any property belonging or owing to Defendants.

      Jack Marine then filed a Motion for Summary Judgment against GMTC. (D.I. 10.) I recommend that the Motion be DENIED.

I.     **BACKGROUND**

    A.     **Procedural History**[1]

Jack Marine's four-page Memorandum Supporting its Motion for Summary Judgment (D.I. 11) does not explain the historical context or procedural history of this dispute. But it appears that the following facts are undisputed, and so I relay them to facilitate ease of understanding. Jack Marine is a Nigerian corporation that provides marine goods and services to ocean-going vessels. (D.I. 11, Ex. C ¶ 3.) On January 31, 2018, Jack Marine filed a Verified Complaint with Request for Issue of Writ of Maritime Garnishment Pursuant to Supplemental Admiralty Rule B in the United States District Court for the Northern District of California (the "California Complaint"). (*Id.*) According to the California Complaint, Defendants Tilman and Nodol are Marshall Islands corporations and were the owners of the vessels M/T Pelenque 1 and M/T Huascar. (*Id.* ¶ 4.) Defendant Trinity was alleged to be the parent company of Tilman and Nodol, and it ordered marine goods and services from Jack Marine to provide to the vessels. (*Id.*) The California Complaint alleged that Jack Marine invoiced Trinity for the goods and services, but Trinity never paid. (*Id.* ¶¶ 6–7.)

The California Complaint alleged a Breach of Maritime Contract claim against Defendants. (*Id.* ¶¶ 13–16.) Defendants did not answer or appear. On May 8, 2018, the Clerk of Court for the Northern District of California entered default judgment against Defendants. (D.I. 1, Att. 1 (entering judgment against Nodol for $95,604.78, against Tilman for $170,133, and against Trinity for $265,737.78).)

---

[1] On a summary judgment motion, the Court may take judicial notice of the existence of court proceedings that have a direct relation to the present case. *Cf. S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 427 n.7 (3d Cir. 1999).

The California Complaint also requested the issuance of a Writ of Garnishment to Silicon Valley Bank, as Jack Marine believed that certain funds belonging to Defendants were located in a particular account there. (D.I. 11, Ex. C ¶¶ 17-21.) On February 2, 2018, the district court issued a Writ of Maritime Attachment and Garnishment. (D.I. 14, Ex. 1.) *Jack Marine Int'l Servs. LTD v. Tilman Enters. Inc.*, No. 18-693, D.I. 19, 20 (N.D. Cal.). After some discovery, however, it was revealed that the bank account in question was actually owned by GMTC, a lender who had previously lent money to Defendants Nodol and Tilman and another related company. GMTC filed a motion to vacate the attachment, which Jack Marine did not oppose. (D.I. 14, Ex. 6, Ex. 9.) *Jack Marine Int'l Servs. LTD v. Tilman Enters. Inc.*, No. 18-693, D.I. 57, 59 (N.D. Cal.). On November 19, 2018, the Northern District of California vacated the attachment of GMTC's bank account. (D.I. 14, Ex. 10.) *Jack Marine Int'l Servs. LTD v. Tilman Enters. Inc.*, No. 18-693, D.I. 62 (N.D. Cal.). On the same date, the Northern District of California action was closed.

On December 27, 2018, Jack Marine registered the California default judgment with this Court. (D.I. 1.) Shortly thereafter, it moved this Court to issue a Writ of Garnishment to GMTC against "credits and monies owed or to-be owed by GMTC I" to Defendants (the "Delaware Motion for Writ"). (D.I. 2.) According to its motion, Jack Marine "ha[d] reason to believe, and d[id] believe" that GMTC owed Defendants money in an amount that exceeded the amount of Jack Marine's judgment against Defendants. (*Id.* at 3.)

This Court granted Jack Marine's Delaware Motion for Writ on January 24, 2019. (D.I. 4.) GMTC filed an Answer on February 4, 2019. (D.I. 7.) GMTC denied that it owed Defendants any money, and it attached a sworn verification that "[t]he garnishee GMTC I, LLC does not currently possess any money or other tangible or intangible property belonging or owing to the Defendants Tilman Enterprises Inc.; Nodol Trading S.A.; and/or Trinity Ships, Inc." (D.I. 7 at 1.)

3

### B. The Loan Agreement

Jack Marine contends that GMTC owes Defendants money in connection with a loan agreement. I will summarize the relevant aspects of that transaction in the light most favorable to GMTC, the non-moving party.

On November 9, 2017, GMTC, as lender, and Tilman, Nodol, and Bondi Shipholding, S.A.,[2] as borrowers, executed a secured loan agreement for $12,500,000. (D.I. 13, Ex. 1.) Pursuant to the agreement, GMTC "agreed to advance to the Borrowers on a joint and several basis up to twelve million five hundred thousand dollars ($12,500,000) to assist the Borrowers to refinance their existing indebtedness over [three vessels owned by Tilman, Nodol, and Biondi]." (*Id.*, Ex. 1 at 1.) On November 9, 2017, the borrowers sent GMTC a drawdown request for the full $12,500,000. (*Id.*, Ex. 2.) Most of those funds were used to pay off the borrowers' existing debts to GMTC. (*Id.* ¶ 6, Ex. 2.) Most of the remainder—$3,875,774.49—was deposited into GMTC's operating account at Silicon Valley Bank on November 13, 2017, and subsequently disbursed out of that account. (*Id.*)

The drawdown request asked that the rest of the remainder—$250,000—be placed in a "Retention Account" owned by GMTC. (*Id.* ¶ 6, Ex. 2 at 2–3.) The loan agreement defined "Retention Accounts" as "accounts to be opened in the names of each of the Borrowers with [a bank not in Greece] or [GMTC] and respectively designated 'Bondi Shipholding, S.A. – Retention Account', 'Tilman Enterprises Inc. – Retention Account' and 'Nodol Trading S.A. – Retention Account'." (*Id.*, Ex. 1 at 13.) Paragraph 17.4 of the loan agreement obliged the borrowers to keep the Retention Accounts funded until the loans were paid off:

> The Borrowers shall maintain the Accounts with [a bank not in Greece] or (in respect of the Retention Accounts) with [GMTC] for

---

[2] Bondi is not a party to this action.

> the duration of the Facility Period free of Encumbrances and rights of set off other than those created by or under the Finance Documents and shall ensure that on or prior to the Drawdown Date the aggregate amount of five hundred thousand dollars ($500,000) (comprising two hundred fifty thousand dollars ($250,000) in respect of each of Bondi and Nodol) shall be credited and maintained on deposit with [GMTC] in the US throughout the Facility Period.

(*Id.*, Ex. 1 at 35.) Pursuant to Paragraph 17.13 of the loan agreement, upon notice of acceleration, all sums from any Retention Account were to be transferred to GMTC, and GMTC was authorized to instruct the bank to make those transfers. (*Id.*, Ex. 1 at 37.) Pursuant to Paragraph 17.14, GMTC was permitted to apply any money received towards satisfaction of the debt. (*Id.*)

The borrowers' November 9, 2017 drawdown request asked GMTC to put the $250,000 in Retention Account money into GMTC's own operating account at Silicon Valley Bank. (*Id.*, Ex. 2 at 2–3.) It is undisputed, however, that GMTC did not put the $250,000 in that account. (*Id.* ¶ 6.)

One month later, the borrowers defaulted on the loan by failing to make payments when due. (*Id.* ¶ 7.) On January 10, 2018, GMTC sent the borrowers a Notice of Default, Acceleration and Demand. (*Id.*, Ex. 4.) GMTC also took actions to protect and preserve the loan collateral, including by making disbursements from funds not belonging to the Defendants. (*Id.* ¶ 8.) GMTC's disbursements greatly exceeded $250,000. (*Id.* ¶ 9.) As a result of the disbursements, GMTC considered the entire amount of the loan—$12,500,000—to have been fully funded. None of the borrowers have alleged breach of the loan agreement by GMTC. (*Id.*)

    **C.**    **The Pending Motion**

Jack Marine has not conducted any discovery in this action. Notwithstanding, on March 8, 2019, it filed a document styled "Plaintiff/Judgment Creditor Jack Marine's Motion for Summary Judgment Against Garnishee GMTC I." (D.I. 10, 11.) Jack Marine submitted with its

motion a number of documents that had previously been filed by GMTC in the California action, including a declaration from a manager of GMTC, Samir Patel, which attached copies of the loan agreement, the drawdown request, and a loan transaction log. (D.I. 11, Ex. A.) Jack Marine also submitted a copy of GMTC's Motion to Vacate the Maritime Attachment from the California action (*id.*, Ex. B); a copy of the California Complaint (*id.*, Ex. C); and an untitled three-page document that Jack Marine contends was obtained through "[d]iscovery which Silicon Valley Bank produced to Jack Marine in the N.D. Cal. Action" (*id.* at 4, Ex. D).

GMTC filed an answering brief on March 22, 2019 (D.I. 12), accompanied by a declaration from Samir Patel. (D.I. 13.) GMTC also submitted copies of a number of documents filed in the California action. (D.I. 14.) Jack Marine filed a one-and-a-half-page reply on March 29, 2019. (D.I. 15.)

## II. LEGAL STANDARDS

### A. Summary Judgment

A party may move for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the movant to demonstrate the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

"An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials,' or by 'showing that the materials cited do not establish the absence or presence of a

genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" *Resop v. Deallie*, No. 15-626-LPS, 2017 WL 3586863, at *2 (D. Del. Aug. 18, 2017) (quoting Fed. R. Civ. P. 56(c)(1)(A) & (B)). A factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### B. Writs of Attachment and Garnishment

A judgment entered in any district court may be registered in any other district by filing a certified copy of the judgment. 28 U.S.C. § 1963. A money judgment may be enforced by writ of execution. Fed. R. Civ. P. 69(a)(1). The execution procedure, including any proceedings in aid of or supplementary to a judgment, must comply with the procedure of the state where the district court is located. *Id.*; *see also LNC Invest., Inc. v. Democratic Repub. of Congo*, 69 F. Supp. 2d 607, 610–11 (D. Del. 1999).

Delaware law provides that a judgment creditor may obtain a writ of attachment to reach the property of their debtor. *See* 10 Del. C. § 5031. It also provides that a judgment creditor may attach a debtor's property that is in the possession of a third party. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 387–88 (D. Del. 2018), *aff'd and remanded*, 932 F.3d 126 (3d Cir. 2019). That process is known as garnishment. *John Julian Const. Co. v. Monarch Builders, Inc.*, 306 A.2d 29, 33 (Del. Super. Ct. 1973), *aff'd*, 324 A.2d 208 (Del. 1974). Under Delaware law, the property that may be attached includes "goods, chattels, rights, credits, moneys, effects, lands and tenements." 10 Del. C. § 3508.

A garnishee's liability to a judgment creditor is determined by its liability to the debtor. *See Wilmington Tr. Co. v. Barron*, 470 A.2d 257, 263 (Del. 1983). That is, a judgment creditor may only collect from a garnishee that property that the debtor could rightfully collect from the garnishee in an action at law. *See Wilmington Tr. Co.*, 470 A.2d at 263 ("If a debtor cannot compel a third party to pay money or deliver certain property to him in an action at law, his creditor has no greater claim by way of garnishment against that third party.").

## III. DISCUSSION

The Court must determine whether the undisputed facts demonstrate a matter of law that GMTC is in possession of Defendants' property. If there are any genuine disputes of material fact, the Court must deny summary judgment.

The record before me does not demonstrate as a matter of law that GMTC is currently in possession of any money belonging to the Defendants. Jack Marine's sole argument in support of collection from GMTC is its contention that Defendants Tilman and Nodol could bring a breach of contract action against GMTC for damages in the amount of $250,000. Jack Marine argues that, pursuant to the 2017 loan agreement, GMTC was required to, but did not, make a $250,000 disbursement into a Retention Account. Jack Marine argues that GMTC's failure to do so amounted to a "plain breach" of the loan agreement, and that GMTC therefore "owes" Tilman and Nodol $250,000. (D.I. 11 at 2–4.)

GMTC, on the other hand, contends that it did not breach the agreement and that it does not owe any money to Tilman and Nodol. (D.I. 12 at 1.)

### A. Jack Marine failed to substantiate its motion with legal authority or record facts.

Jack Marine contends that Tilman and Nodol have a right to the sum of $250,000 due to GMTC's alleged breach of contract. As an initial matter, Jack Marine's motion does not address

which country's (or state's) law should be applied to the 2017 loan agreement. Nor does it mention that the agreement itself states that it should be governed by "English law." (D.I. 13, Ex. 1 at 70.) Indeed, Jack Marine's motion does not cite any legal authority from England or any other jurisdiction on Earth.

But even assuming for the purposes of this decision that there is no difference between Delaware contract law and English contract law, Jack Marine's motion does not point to record facts establishing as a matter of law that Tilman and Nodol had a claim against GMTC for $250,000 at the time the Writ of Garnishment was issued.[3] Its motion could, and should, be denied on that basis alone.

### B. There is a dispute of material fact.

Even if I were persuaded that Jack Marine had sufficiently supported its motion for summary judgment in the first instance, GMTC has provided more than enough evidence to rebut Jack Marine's contention that GMTC owes Tilman and Nodol $250,000. At a minimum, it demonstrates that there is a genuine dispute of material fact.

Contrary to Jack Marine's conclusory assertion, GMTC did not and does not "admit[] that it breached its agreement with Tilman and Nodol." (D.I. 11 at 1.) Moreover, GMTC has submitted evidence supporting its contention that it does not owe any money to the Defendants. The uncontroverted declaration of Samir Patel explains that the loan was fully disbursed and that, upon default, Tilman and Nodol relinquished their rights to money held in any Retention Accounts. (D.I. 13 ¶¶ 8-9.) Mr. Patel's declaration is supported by the loan agreement itself, which states

---

[3] I could set forth various legal and factual arguments that Jack Marine might have made (but did not) for the purpose of explaining why they do not entitle Jack Marine for relief, but that is not the role of the Court.

9

that, in the event of acceleration, Retention Account funds are to be immediately transferred to the Lender and applied to Defendants' debt. (D.I. 13, Ex. 1.)

In short, Jack Marine alleges, and GMTC denies, that Tilman and Nodol have a right to $250,000 due to GMTC's alleged breach of the loan agreement. There being disagreement over (1) whether GMTC breached the loan agreement and (2) the amount of damages, if any, resulting from the breach—both of which are material facts (at least under Delaware contract law)—summary judgment is inappropriate.[4]

## IV. CONCLUSION

For the foregoing reasons, I recommend that Jack Marine's motion for summary judgment be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: June 26, 2020

                                                                               Jennifer L. Hall
                                                                               UNITED STATES MAGISTRATE JUDGE

---

[4] Because I conclude that there is a material factual dispute that precludes summary judgment, I do not address GMTC's argument that Jack Marine's claim is barred by res judicata.